1

2

# NOT FOR PUBLICATION

3

4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 5  FIONA M. B., | Case No.:  20-cv-1250-AGS |
| 6                                  Plaintiff, | **ORDER ON SUMMARY-JUDGMENT** |
| 7  v. | **MOTION (ECF 14)** |
| 8  Kilolo KIJAKAZI, Commissioner of | |
| 9  Social Security, | |
| 10                                Defendant. | |

11      The question here is whether a Social Security judge impermissibly rejected

12  claimant's statements and her mother's testimony regarding her fibromyalgia symptoms.

13                                **BACKGROUND**

14      Plaintiff Fiona M. B. applied for Social Security disability benefits, alleging that she

15  cannot work due to a multitude of ailments, including chronic joint pain and fibromyalgia.

16  (AR 70-71.) Her symptoms allegedly include weakness, constant pain in her joints,

17  dizziness, migraines, and brain fog. (AR 43-46, 229.) Fiona's mother offered corroborating

18  testimony. (AR 61-62.) After a hearing, an Administrative Law Judge concluded that Fiona

19  could perform light work with limitations and so denied her disability request. (AR 20, 25.)

20                                 **DISCUSSION**

21      After deciding a claimant has an ailment that might cause such symptoms, an ALJ

22  must "evaluate[s] the intensity and persistence of those symptoms to determine the extent

23  to which [they] limit [claimant's] ability to perform work-related activities." SSR 16-3p,

24  2017 WL 5180304, at *3 (October 25, 2017). The ALJ determined that Fiona suffered from

25  "chronic joint pain, fibromyalgia, and major joint disfunction," (AR 20), but her

26  impairments did not "render[] her totally disabled." (AR 21.) To reach that conclusion, the

27  ALJ rejected Fiona's statements and her mother's testimony regarding the intensity of her

28  symptoms. (*Id.*) Fiona challenges this decision.

1

**A.     Plaintiff's Subjective Symptom Testimony**

When "consider[ing] [the claimant's] statements about the intensity, persistence, and limiting effects of symptoms, [an ALJ] evaluate[s] whether the statements are consistent with objective medical evidence and the other evidence." SSR 16-3p, 2017 WL 5180304, at *6. An ALJ may only reject a claimant's testimony regarding the severity of her symptoms by providing "specific, clear and convincing reasons." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The Court considers below the ALJ's grounds for discounting Fiona's testimony about the severity of her symptoms.

### 1. *Inconsistent with Objective Medical Evidence*

One reason the ALJ rejected Fiona's subjective testimony is because it wasn't "entirely consistent with the medical evidence." (AR 23.) The ALJ noted, for example, that Fiona's physical exams over a five-year span showed that her "range of motion was normal in her musculoskeletal, upper extremities, and neck," and that there was "no swelling in her bilateral hands, wrists or ankles." (AR 21.) The ALJ also cited a doctor who "reported there was no specific area of the musculoskeletal to examine[,] and for the extremities, there was no cyanosis, clubbing or edema." (AR 23.) And when Fiona presented to the emergency room in 2017, her "physical exam was relatively unremarkable, the lab tests were all negative and her vital signs were stable." (AR 22.)

But these results are consistent with Fiona's fibromyalgia. Fibromyalgia is "poorly-understood within much of the medical community." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Its "cause is unknown," "there is no cure," and "[t]he disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id.*; *see also Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017) ("[D]iagnosis of fibromyalgia does not rely on X-rays or MRIs."); *Cota v. Comm'r of Soc. Sec.*, No. 08-00842, 2009 WL 900315, at *9 (E.D. Cal. Mar. 31, 2009) ("Joints in fibromyalgia patients appear normal; musculoskeletal examinations generally indicate no objective joint swelling or abnormality in muscle strength, sensory functions, or reflexes."). Thus, Fiona's "unremarkable" tests

2

1  and exams do not contradict her reports of "constant pain" and "full body pain."

2  (AR 43-44.)

3      In addition, "the symptoms of fibromyalgia 'wax and wane,'"—"a person may have

4  'bad days and good days.'" *Revels*, 874 F.3d at 657 (quoting SSR 12-2p,

5  2012 WL 3104869, at *6). So a chiropractor's observation that "Fiona's prognosis is good

6  at this time," is compatible with his subsequent remark that "[s]ome days[,] when Fiona

7  has a neurol[o]gical flare[,] there are zero work tasks that can be done and should be

8  refrained from." (AR 1096.) Because the ALJ failed to consider the medical record "in

9  light of fibromyalgia's unique [characteristics]," his recitation of Fiona's medical history

10  is not a convincing reason to reject her testimony.[1] *Revels*, 874 F.3d at 662.

11      **2.  *Routine Conservative Treatment***

12      Next, the ALJ contended that Fiona's record shows "mostly [] routine conservative

13  treatment." (AR 21.) The Ninth Circuit has "indicated that evidence of conservative

14  treatment is sufficient to discount a claimant's testimony regarding severity of an

15  impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (internal quotation marks

16  and citation omitted). But there is "no guiding authority on what exactly constitutes

17  'conservative' or 'routine' treatment." *Childress v. Colvin*, No. 13-CV-03252-JSC,

18  2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014). For example, the "authority

19  considering whether use of narcotic pain medication by itself constitutes 'conservative'

20

21  _____

22      [1] The Commissioner also argues that Fiona's physical activities contradict her

23  symptom testimony. (*See* ECF 17, at 10 ("Plaintiff sought treatment for . . . knee and wrist

    pain yet reported that she walked for one to three hours per day . . . .").) But the ALJ did

24  not articulate this rationale, and the Court is "constrained to review the reasons the ALJ

25  asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also Bray v. Comm'r

    of Soc. Sec.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of

26  administrative law require us to review the ALJ's decision based on the reasoning and

27  factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit

    what the adjudicator may have been thinking.").

28

1    treatment goes both ways." *Vuoso v. Colvin*, No. CV 15-1255-PLA, 2016 WL 1071576,

2    at *9 (C.D. Cal. Mar. 16, 2016) (gathering cases). *Compare Aguilar v. Colvin*,

3    No. CV 13-08307-VBK, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be

4    difficult to fault Plaintiff for overly conservative treatment when he has been prescribed

5    strong narcotic pain medications."), *with Vuoso*, 2016 WL 1071576, at *9 (upholding

6    ALJ's finding that claimant's treatment was "conservative and routine" when she was

7    "prescribed two narcotic medications" but received no other pain-related treatment). Some

8    courts go even further and consider any regimen, in "the absence of surgery or injections,

9    to be 'conservative' treatment." *See Childress*, 2014 WL 4629593, at *12 (gathering cases).

10   When treatment is limited to nonnarcotic medications and noninvasive therapies, the

11   treatment is more likely to be considered "conservative." *See, e.g.*, *Edginton v. Colvin*,

12   625 F. App'x 334, 336 (9th Cir. 2015) (considering "medications and an electronic

13   transcutaneous electrical nerve stimulation unit" to be "conservative treatment");

14   *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (considering "physical therapy

15   and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation

16   unit, and a lumbosacral corset" to be "conservative treatment"). This finding is especially

17   likely when more "aggressive treatment program[s]" are available. *See Tommasetti*,

18   533 F.3d at 1039 & n.2 ("[The applicant] testified that his doctors suggested back surgery,

19   but that he did not want to risk the procedure.").

20        Fiona has received various treatments over the years: Dilaudid, Norco, hydrocodone,

21   and other narcotics for generalized pain (*see* AR 73, 345, 347-48, 385, 536, 797-98);

22   Cymbalta and nortriptyline to treat fibromyalgia (AR 426); spinal manipulation and

23   arthrostimulation (AR 1092-93); and physical therapy (AR 407, 423, 492-93, 537, 845).

24   Fiona was also administered at least one nonsteroidal anti-inflammatory injection

25   (AR 389) and sought emergency care for her pain multiple times (AR 22, 73, 82, 106).

26   Given the length and breadth of Fiona's regimen, "it is not at all obvious to this Court that

27   consistent treatment" with "increasingly strong narcotic pain medications . . . , as well as

28

1  anti-inflammatory drugs and physical therapy, is 'conservative' treatment." *See Tran v.*
2  *Colvin*, No. EDCV 15-0671 AS, 2016 WL 917891, at *7 (C.D. Cal. Mar. 8, 2016).

3       Moreover, "the ALJ failed to describe the type of treatment [p]laintiff should have
4  sought for . . . fibromyalgia, . . . a disease for which there is no known cause or cure."
5  *Rose v. Berryhill*, 256 F. Supp. 3d 1079, 1089 (C.D. Cal. 2017). So, Fiona "cannot be
6  discredited for failing to pursue non-conservative treatment options where none exist."
7  *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010). The Court concludes
8  that "conservative treatment" was not a valid basis for discrediting Fiona's testimony.

9       **3.  *Lack of Ongoing Treatment***

10       Finally, the ALJ found that the "medical evidence lacks sufficient ongoing
11  treatment," which he attributed to improvement. (AR 21; *see* AR 22 ("[Because] the
12  claimant has not sought any medical treatment for her alleged impairments since
13  March 2018, it may be reasonable to assume that her alleged impairments and associated
14  pain have improved and/or been controlled.").) But the Social Security Administration
15  "will not find an individual's symptoms inconsistent . . . without considering possible
16  reasons he or she may not . . . seek treatment consistent with the degree of his or her
17  complaints." SSR 16-3p, 2017 WL 5180304, at *9. Potential reasons a claimant may stop
18  seeking medical help include that the "symptoms have reached a plateau," that "the side
19  effects are less tolerable than the symptoms," or that the "individual may not be able to
20  afford treatment." *Id.* at *9-10. Additionally, there may be "no further effective treatment
21  to prescribe or recommend that would benefit the individual." *Id.* at *10.

22       The record shows that Fiona's medications were often ineffective. (*See, e.g.*, AR 430
23  ("Tried multiple meds as listed above without improvement."); AR 447 ("No improvement
24  with [N]orco."); AR 473 ("No improvement on [M]obic or Pamelor."); AR 501 ("Norco
25  and [A]dvil with minimal relief."); *id.* ("Prednisone from urgent care at high doses did not
26  dramatically improve her symptoms.").) Fiona also reported that she "couldn't tolerate[]
27  the side effects" of her medications, which included "blurred/double vision, [central
28  nervous system] effect, and nausea," (AR 426, 428, 487), and that her fibromyalgia

1    medication "made her too drowsy [so she] stopped." (*See* AR 408.) She also alluded to

2    financial constraints deterring her from recent treatment. (*See* AR 46 (visiting her

3    chiropractor "[w]hen [she has] the money to do so")).) And finally, "[t]here is no cure or

4    known surgical treatment for fibromyalgia." *Olguin v. Astrue*, No. CV 08-6548-JEM,

5    2009 WL 4641728, at *11 (C.D. Cal. Dec. 2, 2009). The ALJ's failure to grapple with any

6    of these explanations in the record renders this last rationale unconvincing.

7          Because the ALJ failed to consider fibromyalgia's unique characteristics, Fiona's

8    extensive treatment history, and her legitimate reasons for not seeking more aggressive

9    remedies (or any remedy at all), he erroneously rejected Fiona's statements regarding her

10   subjective symptoms.

11   **B.     Harmless-Error Review**

12         But the Court must still "affirm if the error is harmless." *Zavalin v. Colvin*, 778 F.3d

13   842, 845 (9th Cir. 2015). An error is harmless when it is "inconsequential to the ultimate

14   nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56

15   (9th Cir. 2006). At Fiona's hearing, the ALJ questioned the vocational expert about a

16   hypothetical claimant based on Fiona's testimony: "Off task six hours out of eight; miss

17   work two weeks a month; able to walk 1.5 blocks at one time; walk or stand for . . .

18   20 minutes; sit [for] . . . one hour; has to lay down [one hour in every] eight hours"; and

19   other lifting and postural limitations. (AR 68.) In that scenario, the vocational expert

20   confirmed that there would be "no jobs in the competitive economy," so claimant

21   "wouldn't be able to maintain any employment." (*Id.*) Because fully crediting Fiona's

22   testimony could lead to a disability finding, the Court concludes that the error here was not

23   harmless.

24   **C.     Remedy**

25         Fiona seeks immediate payment of benefits due to this error. (ECF 14, at 1.) When

26   "the record has been developed fully and further administrative proceedings would serve

27   no useful purpose, the district court should remand for an immediate award of benefits."

28   *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (citation

1   omitted). Even so, courts have "flexibility to remand for further proceedings when the

2   record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v.*

3   *Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

4        The record here casts doubt on Fiona's entitlement to benefits. Plaintiff's reported

5   activities, which include walking one to three hours each day and "swimming and doing

6   yoga 2-3 times/week," raise questions about her physical abilities. (AR 408.) And, although

7   the ALJ found that fibromyalgia was one of plaintiff's medically determinable

8   impairments, plaintiff herself reports that she "recently found out [it] could be [Ehlers-

9   Danlos syndrome] with fibro like symptoms." (*Id.*; *see also* AR 73 ("[Fiona] does not fit

10   the picture of [fibromyalgia].").) Finally, Fiona's mother suggests there may be jobs within

11   plaintiff's capacity. (*See* AR 61-62 ("Jobs that she's able to do don't pay enough.").) Thus,

12   the case should be remanded so that the ALJ may reconsider the full record and consider

13   the unique characteristics of fibromyalgia.

## CONCLUSION

15        The Court need not reach whether Fiona's mother's testimony was erroneously

16   rejected. Because the ALJ's erroneous disability ruling requires remand, Fiona's summary-

17   judgment motion is granted. The case is remanded for further proceedings consistent with

18   this opinion. The Clerk is directed to issue a judgment and close this case.

19   **REVERSED AND REMANDED.**

20   Dated:  March 22, 2022

21

22                                  Hon. Andrew G. Schopler

                                United States Magistrate Judge

23

24

25

26

27

28